UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARNEST L. THOMAS,

    Plaintiff,                                        Civil Action No. 11-15032

v.                                                   HON. THOMAS L. LUDINGTON
                                                  U.S. District Judge
                                                  HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Ernest Lee Thomas brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

       On November 24, 2008, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging an onset date of April 3, 2008 (Tr. 47). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on February 5, 2010 in Flint,

Michigan (Tr. 160). Administrative Law Judge ("ALJ") John A. Ransom presided. Plaintiff, unrepresented, testified (Tr. 162-172), as did Pauline McEachin, a vocational expert ("VE") (Tr. 172-174). On February 19, 2010, ALJ Ransom determined that Plaintiff was not disabled, finding that he was capable of a significant range of sedentary work (Tr. 19-20). On September 9, 2011, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final decision on November 14, 2011.

## BACKGROUND FACTS

Plaintiff, born August 21, 1969, was 40 when the ALJ issued his decision (Tr. 19, 47). He completed 11th grade and worked previously as a machine operator as well as a dryer and folder at a dry cleaners (Tr. 102, 104). He alleges disability due to hand, foot, and back pain as a result of lumbar spine problems and hyperkeratosis (Tr. 101).

### A. Plaintiff's Testimony

Plaintiff testified that he currently lived in Flint, Michigan with his wife and two young children (Tr. 162-163). He reported standing 5'9" and weighing 233 pounds (Tr. 163). He indicated that his family was supported by his wife's SSI disability benefits as a result of lupus and his son's SSI benefits for seizures (Tr. 163-164).

Plaintiff stated that he applied for disability because his body was "breaking down" (Tr. 164). He alleged constant back and leg pain, describing the pain as radiating from hip level to his right ankle (Tr. 164). He reported that he was currently taking pain medication for back pain (Tr. 166). He denied side effects from the medication but noted that epidural injections made him nauseated (Tr. 166). He then stated that one of his oral medications

made him "drowsy and dizzy" (Tr. 166). In addition to back problems, Plaintiff alleged that the surgical removal of large warts from his feet created difficulty walking (Tr. 167). He stated that dermatitis of the hands and feet had been unsuccessfully treated with injections and that treating sources had recommended surgery for the condition (Tr. 167). Plaintiff alleged that the hand condition created problems grasping objects (Tr. 167-168). He stated that he would require his wife's help taking a bath, due to his inability to get in or out of a bathtub by himself (Tr. 168).

Plaintiff denied the ability to sit or stand for more than three minutes; walk for more than half a block; or perform any lifting or bending (Tr. 168-169). He denied yard work or participation in sports, but stated that he attended church every other Sunday (Tr. 170). He reported that he spent his waking hours reclining and reading the Bible (Tr. 171). He testified that he had been told by treating sources that back surgery would be a "last resort" (Tr. 171). He stated that he had never held a driver's license (Tr. 172).

### B. Medical Evidence

### 1. Treating Sources

In April, 2007, neurologist Wilbur J. Boike, M.D. examined Plaintiff, noting complaints of lower back and right leg pain (Tr. 167). Dr. Boike observed that Plaintiff "has enjoyed excellent health," noting that reflexes, muscle strength, and coordination were all normal (Tr. 107). Dr. Boike observed "a slight decrease in lumbosacral spine flexibility . . ." (Tr. 107). He opined that Plaintiff would benefit from physical therapy (Tr. 107). Following one month of therapy, Plaintiff reported to Dr. Boike that he felt "50 percent

better" (Tr. 132).  Dr. Boike remarked that  "considerable . . . inconsistencies and embellishments" by Plaintiff were noted by therapy staff (Tr. 132).  August 2007 treating notes state that Plaintiff declined epidural injections (Tr. 128).

In November, 2008, Plaintiff reported painful lesions on both hands and feet (Tr. 135). In January, 2010, Dr. Robert Kuffa stated that Plaintiff experienced spondylosis and degenerative disc disease at L5-S1 "with thecal sac impingement" (Tr. 156).  Dr. Kuffa noted that Plaintiff was currently being evaluated for epidural injections (Tr. 156).

### 2.  Non-treating Sources

In March, 2009, S.L. Schuchter, M.D. performed a one-time examination of Plaintiff on behalf of the SSA (Tr. 137-142).  Dr. Schuchter observed lesions of the hands and feet, noting that Plaintiff reported liquid nitrogen treatment for the condition "every two to three weeks" (Tr. 137).  Plaintiff demonstrated a limited range of motion in the lumbar spine and ankles (Tr. 139-140).   He displayed normal manipulative functions but experienced difficulty heel and toe walking due to a bone deformity of the foot (Tr. 137, 141-142).

The following month, Maso Demps performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 148-155).  Based on the treating and consultive records, Demps found that Plaintiff could lift a maximum of 10 pounds; stand or walk for two hours in an eight-hour workday, and sit for six (Tr. 149).  Plaintiff was deemed capable of pushing and pulling without limitation (Tr. 149).  His postural restrictions consisted of occasional balancing, stooping, kneeling, crouching, crawling, and ramp/stair climbing and a complete preclusion on the climbing of ladders, ropes, or scaffolds (Tr. 150).

He was limited to frequent (as opposed to *constant*) handling and fingering in both hands (Tr. 151). Demps found the absence of visual and communicative limitations but found that Plaintiff should avoid concentrated exposure to temperature extremes (Tr. 152). Demps found allegations of limitation "partially credible," noting Plaintiff's ability to stand and sit without discomfort; get on and off an examination table without problems; and the ability to perform a variety of manipulative functions (Tr. 153).

### C. Vocational Expert

VE Pauline McEachin classified Plaintiff's former job as a machine operator as sedentary and unskilled and work as a cleaner as exertionally light and unskilled[1] (Tr. 55). The VE testified that if Plaintiff's claim that he needed to recline all day, every day, were credited, he would be unable to perform any work (Tr. 173). The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work background:

> If he could perform sedentary work with the following restrictions, no repetitive bending, twisting, or turning, a sit, stand option at will with no repetitive pushing, pulling, gripping, or grasping. No air or vibrating tools. Limited gripping, fingering, and fine dexterity, and no temperature extremes. Would there be jobs in existence in significant numbers in the regional

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

economy that he could perform, including any of his past work?

(Tr. 173). The VE responded that given such limitations, Plaintiff would be unable to perform any of his former jobs but could work as a video surveillance monitor (2,000 jobs in the regional economy); visual inspector (2,200); and information clerk (1,200) (Tr. 174). She stated that her testimony conformed to the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 174).

### D. The ALJ's Decision

Citing the medical transcript, ALJ Ransom found that although Plaintiff experienced the severe impairments of "degnerative disc disease and dermatitis of the hands and feet" neither condition met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 15). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following restrictions:

> [S]it/stand option at will, no repetitive bending, twisting or turning, no repetitive pushing, pulling, gripping or grasping, no air or vibrating tools, limited gripping, fingering and fine dexterity, and no temperature extremes.

(Tr. 15). Adopting the VE's job findings, he determined that Plaintiff could perform the work of a video surveillance monitor, visual inspector, and information clerk (Tr. 18).

The ALJ rejected allegations of disability as a result of dermatitis of the hands and feet, noting that following wart removal surgery, Plaintiff did not report any functional limitations (Tr. 17). The ALJ observed that Plaintiff's professed inability to sit for more than three minutes at a time was undermined by the fact that he was able to sit through the 20-

minute administrative hearing (Tr. 17).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[2]

**The Vocational Expert's Testimony is Supported by Substantial Evidence**

Plaintiff argues that "the VE testified to jobs that were not within the scope of the claimant's medical records nor his testimony." *Plaintiff's Brief* at 8, *Docket #8*. He asserts that two of the three job titles cited by the VE, video surveillance monitor and visual inspector, "cannot specifically be found in the DOT." *Id.* at 7. He contends further that the third cited job, information clerk, requires math and language skills exceeding his abilities. *Id.* Although Plaintiff cites "hypothetical question" case law, he does not argue directly that the hypothetical question itself failed to account for all of his limitations. Rather, he contends that the VE's job findings were inconsistent with the DOT. *Id.* at 7-8.

[T]he Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)(citing S.S.R. 00-4p, 2000 WL 1898704, at *4). Notwithstanding, "'[n]othing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Lindsley* at 606 (citing *Martin v. Comm'r of Soc. Sec.,* 170 Fed.Appx. 369, 374 (6th Cir.2006)).

Likewise, here, the ALJ complied with the requirements of SSR 00-4p by asking the

---

[2] Any issue not raised directly by Plaintiff is deemed waived, pursuant to *U.S. v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). *See also Young v. Secretary of Health & Human Services,* 925 Fed. 2d 146 (6th Cir. 1990).

VE if her testimony was consistent with the information found in the DOT (Tr. 174). The ALJ was not obliged to further challenge the veracity of the vocational testimony. *Lindsley* at 606. Further, Plaintiff's counsel did not dispute any of the VE's job findings (Tr. 174-175). As such, the ALJ's adoption of the uncontradicted testimony does not provide grounds for remand. *Id.*

Plaintiff's substantive argument that the VE's testimony did not conform to the hypothetical limitations posed by the ALJ is also without merit. Defendant acknowledges Plaintiff's secondary argument that two "visual inspector" positions found in the DOT are listed at the light, rather sedentary level. *Defendant's Brief* at 5, *Docket #11* (citing *Plaintiff's Brief* at 8). However, Defendant contends that the VE's testimony was consistent with the DOT, citing a number of inspector positions listed in the DOT requiring the inspection of watch parts, DOT 715.384-022; office machines, 706.687-026; sunglasses, 713.667-010; and a number of other sedentary positions requiring visual inspection. *Id.* Although Plaintiff notes that the job title "video surveillance monitor" does not appear in the DOT, the DOT contains a listing for "surveillance-system monitor" which requires the use of television monitors. *Defendant's Brief* at 4 (citing DOT 379.367-010). As such, the VE's testimony that Plaintiff could perform the work of a video surveillance monitor is not inconsistent with the information found in the DOT.

The VE's finding that Plaintiff was capable of the work of an information clerk is also consistent with the hypothetical question and the transcript as a whole. While Plaintiff testified that he was capable of only "a little" reading and writing (Tr. 163) he later admitted

-10-

that he spent most of his waking hours reading the Bible.  Plaintiff's contention that the hypothetical question and/or the VE's testimony did not account for his limited 11th grade education is contradicted by the fact that Plaintiff's level of education, along with age and work history, were to be considered in making the job findings (Tr. 172).  Notably, Plaintiff has not alleged, until now, that he was incapable of simple mathematical calculations or the reading and writing skills necessary to perform the unskilled work of information clerk. Because Plaintiff has not identified errors in the vocational testimony, remand is unwarranted.

     In closing, I note that the transcript as a whole does not strongly support a finding of disability.  Because  the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: November 27, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 27, 2012.

s/Johnetta M. Curry-Williams<br>
Case Manager